Stuart M. Richter (CA 126231)
stuart.richter@kattenlaw.com
Gregory S. Korman (CA 216931)
greg.korman@kattenlaw.com
Camille A. Cameron (CA 307859)
camille.cameron@kattenlaw.com
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone:  310.788.4400
Facsimile:   310.788.4471

Attorneys for Defendant HSBC Bank USA, N.A.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMIRO GIRON, NICOLAS J. HERRERA, and ORLANDO ANTONIO MENDEZ, on behalf of themselves and a class of all other similarly situated<br><br>Plaintiffs<br><br>v.<br><br>HONG KONG AND SHANGHAI BANK COMPANY, LTD, a foreign company; HSBC BANK USA, N.A., a national banking association; and DOES 1 through 100, inclusive<br><br>Defendants | Case No. 2:15-cv-08869-ODW-JC<br><br>**HSBC Bank USA, N.A.'s Reply in Support of Motion for Summary Judgment**<br><br>[Filed concurrently with Reply Separate Statement; Korman Declaration; Evidentiary Objections; and Responses to Evidentiary Objection]<br><br>Hearing<br>Date:  November 9, 2017<br>Time:  2:30 p.m.<br>Place:  Courtroom 5D<br><br>**Hon. Otis D. Wright II**<br><br><u>Final Pretrial Conference</u>: November 19, 2018<br><u>Trial Date</u>: December 11, 2018 |

**UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

# **TABLE OF CONTENTS**

**Page**

I. Summary of Reply ...................................................................................1

II. Lack of Causation Necessitates Summary Judgment on All Claims. ........2

III. UCC Article 4A Displaces Plaintiffs' Common Law Claims ...................5

IV. Summary Judgment Is Warranted on Plaintiffs' Aiding and Abetting Claims..........................................................................................7

    A. Plaintiffs Have Not Met the Actual Knowledge Element...............7

    B. Plaintiffs Have Not Met the Substantial Assistance Element.........8

    C. Plaintiffs Failed to Establish a Fiduciary Relationship. ...............10

    D. The Elements of Common Law Fraud Are Not Met. ...................11

V. Summary Judgment Is Warranted on Plaintiffs' UCL Claim.................11

VI. Conclusion...............................................................................................12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bell Atlantic Corp v.Twombly*
  27 S. Ct. 1955 (2007) ........................................................................................... 3

*Berg & Berg Enters., LLC v. Boyle*,
  178 Cal. App. 4th 1020 (2009) .......................................................................... 11

*British Airways Bd. v. Boeing Co.*,
  585 F.2d 946 (9th Cir. 1978) ............................................................................... 1

*Bullard v. Wastequip Mfg. Co.*,
  No. CV-14-01309 MMM (SSx), 2015 WL 12766467 (C.D. Cal.
  Apr. 14, 2015)................................................................................................... 12

*Casey v. U.S. Bank Nat'l Ass'n*,
  127 Cal. App. 4th 1138 (2005) .................................................................. 7, 8, 9

*Chino Commercial Bank, N.A. v. Peters*,
  190 Cal. App. 4th 1163 (2010) ........................................................................5, 6

*Crochet v. Wal-Mart Stores, Inc.*,
  No. 6:11-01404, 2012 WL 489204 (W.D. La. Feb. 13, 2012)............................ 8

*Crowell v. Beeler*,
  No. 1:14-CV-10724 AWI BAM, 2017 WL 1198579 (E.D. Cal.
  Mar. 31, 2017) .................................................................................................... 1

*El Camino Res., LTD. v. Huntington Nat'l Bank*,
  722 F. Supp. 2d 875 (W.D. Mich. 2010), *aff'd,* 712 F.3d 917 (6th
  Cir. 2013)............................................................................................................ 9

*Gordon v. Virtumundo, Inc.*,
  575 F.3d 1040 (9th Cir. 2009) ............................................................................ 2

*Hunter v. Citibank, N.A.*,
  No. C 09-02079 JW, 2010 WL 2509933 (N.D. Cal. Feb. 3, 2010) ................5, 6

*In re Agape Litig.*,
  681 F. Supp. 2d 352 (E.D.N.Y. 2010)............................................................... 10

*In re Consol. Meridian Funds*,
    485 B.R. 604 (Bankr. W.D. Wash. 2013) .......................................................... 10

*In re Equity Funding Corp. of Am. Secs. Litig.*,
    416 F. Supp. 161 (C.D. Cal. 1976) ..................................................................... 3

*In re First All. Mortg. Co.*,
    471 F.3d 977 (9th Cir. 2006) ..................................................................... 3, 4, 7

*Koss Corp. v. Am. Exp. Co.*,
    233 Ariz. 74 (2013) ............................................................................................ 6

*Lone Star Sec. & Video, Inc. v. City of Los Angeles*,
    989 F. Supp. 2d 981 (C.D. Cal. 2013) ............................................................... 2

*Mosier v. Stonefield Josephson, Inc.*,
    815 F.3d 1161 (9th Cir. 2016) ........................................................................... 4

*Peterson Dev. Co. v. Torrey Pines Bank*,
    233 Cal. App. 3d 103 (1991) ........................................................................... 10

*Receivers of Sabena SA v. Deutsche Bank A.G.*,
    36 N.Y.S.3d 95 (N.Y. App. Div. 2016) ............................................................. 3

*Sheerbonnet Ltd. v. Am. Exp. Bank, Ltd.*,
    951 F. Supp. 403 (S.D.N.Y. 1995) .................................................................... 6

*United States v. El-Mezain*,
    664 F.3d 467 (5th Cir. 2011) ............................................................................. 8

*Worldvision Enters., Inc. v. Am. Broad. Cos.*,
    142 Cal. App. 3d 589 (1983) ........................................................................... 10

*Zengen, Inc. v. Comerica Bank*
    41 Cal. 4th 239 (2007) ................................................................................... 5, 6

**Statutes**

Private Securities Litigation Reform Act 1995 ........................................................ 3

UCC § 4A-102 ................................................................................................ 1, 5, 6

UCC § 4A-212 ......................................................................................................... 6

UCC § 4A-209 ......................................................................................................... 6

UCC § 10(b) .................................................................................................... 3

**Rules**

Fed. R. Civ. P. 11 .......................................................................................... 12

# Memorandum of Points and Authorities

## I. Summary of Reply

Summary judgment is warranted because the lone defendant, HSBC Bank USA, N.A. ("HSBC USA"), had no involvement in the financial transactions that Plaintiffs complain harmed them. HSBC USA was not their bank. It was not the alleged Ponzi-schemer's bank. Plaintiffs allege that HSBC USA was the intermediary bank for their wire transfers but it was not even that. HSBC USA did not sell Plaintiffs any product or provide Plaintiffs any service. Plaintiffs might as well be suing an airline they never flew about a flight they did not take, or a restaurant they never visited over a meal they never ate. Because HSBC USA played no part in Plaintiffs' investment transactions, it did not cause Plaintiffs' alleged harm, did not aid or abet fraud or a breach of fiduciary duty, and did not engage in conduct prohibited by the UCL. HSBC USA is therefore entitled to summary judgment.

In addition, Article 4A of the UCC exclusively defines the circumstances under which an intermediary bank can be liable for executing wire transfers. Under Article 4A, an intermediary bank has no liability for accepting authorized, error-free wire transfer orders, even under circumstances that allegedly were suspicious. Here, Plaintiffs assert state law claims purporting to impose liability on HSBC USA for that very conduct which, under Article 4A, is not actionable. Article 4A displaces those claims, independently warranting summary judgment.

As discussed below and in HSBC USA's evidentiary objections and reply separate statement, Plaintiffs oppose summary judgment with speculation and argument untethered to the record or the rules of evidence, none of which raises a triable issue of fact. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978) (statements made by counsel "cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion where no dispute otherwise exists[,]" as "legal memoranda and oral argument are not evidence"); *Crowell v.*

*Beeler*, No. 1:14-CV-01724 AWI BAM, 2017 WL 1198579, at *2 n.1 (E.D. Cal. Mar. 31, 2017) ("arguments of counsel alone are insufficient to raise a dispute of fact"). HSBC USA is entitled to relief. Respectfully, the motion should be granted.

## II. Lack of Causation Necessitates Summary Judgment on All Claims.

Causation is an element of Plaintiffs' claims and it is fatally absent. HSBC USA was not the intermediary or correspondent bank for any of Plaintiffs' wire transfers. HSBC USA had nothing to do with Plaintiffs or their investments. This is undisputed. Thus, HSBC USA did not cause Plaintiffs' alleged losses.

Plaintiffs' assertion that HSBC USA caused their injury by processing *other people's* wire transfers, with no connection to Plaintiffs, is rank speculation unsupported by law. *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1058 (9th Cir. 2009) ("[The nonmoving party] cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." (internal citation and quotations omitted)); *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 989 F. Supp. 2d 981, 987 (C.D. Cal. 2013) ("Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact."). There is no evidence that Plaintiffs would not have invested in WCM777 Limited if HSBC USA had not executed *other people's* intermediate wire transfers. And there is no evidence that HSBC USA was necessary to wiring money to WCM777 Limited in general. The record is, instead, to the contrary: Plaintiffs themselves were perfectly able to send money to WCM777 Limited wholly without HSBC USA's involvement. That is what they did, which is why it is undisputed that HSBC USA did *not* cause Plaintiffs' alleged losses.[1]

---

[1] Plaintiffs characterize inadmissible webpages as "proof" that HSBC USA was the only domestic correspondent bank for HSBC Hong Kong. *See* HSBC USA's Evidentiary Objections to Plaintiffs' Additional Facts 22-23. This is misleading and irrelevant. It does not matter if HSBC Hong Kong had one correspondent account or one hundred, only whether Plaintiffs could wire funds to WCM777 Limited *without HSBC USA's involvement*. They could, and they did. Thus, any causal link between Plaintiffs' transactions and HSBC USA is non-existent.

No case supports Plaintiffs' wild theory that they can recover from a defendant that has no connection to them or their transaction and did nothing to cause their losses. The district court's ruling in the forty-year-old securities case that Plaintiffs cite, *In re Equity Funding Corp. of Am. Secs. Litig.*, 416 F. Supp. 161 (C.D. Cal. 1976), does not help them manufacture causation. That case, decided at the pleading stage, before the PSLRA and *Twombly* existed, allowed insider traders to be liable under Section 10(b) and Rule 10b-5 to plaintiffs who purchased stock on the open market during the relevant period. *Id.* at 185-86. As illustrated by the district court's full quote—not just the last few words selectively excerpted in Plaintiffs' brief—this outcome turned entirely on federal securities law:

> Given the purpose of the federal securities laws as expressed in the opinions of various courts, that is, 'to insure the integrity and efficiency of the securities markets,' [] where massive trading without disclosure of material inside information on the national securities markets is alleged, the privity arguments made by the defendants must be rejected.

*Id.* at 185. This is not a securities case; no insider trading is involved; and no national securities markets are involved. *Equity Funding* is inapplicable.[2]

On this point, *In re First All. Mortg. Co.*, 471 F.3d 977 (9th Cir. 2006) also is inapplicable. *First Alliance* did not remove or alleviate the requirement of causation, it held merely that the jury was "not precluded as a matter of law" from finding that Lehman Brothers substantially assisted First Alliance in its mortgage origination fraud. *Id.* at 995. That conclusion, affirming a verdict after trial, was

---

[2] *Equity Funding* was a "privity" case, which is different from causation. Privity would be a defense if HSBC USA *had* been the intermediary bank for Plaintiffs' wire transfers. *See Receivers of Sabena SA v. Deutsche Bank A.G.*, 36 N.Y.S.3d 95, 105 (N.Y. App. Div. 2016) ("As the Second Circuit noted in a case holding that, under New York law, the originator of an EFT had no right of action against an intermediary bank, 'sound policy reasons' support Article 4–A's requirement that each party to an EFT seek redress for a failed transfer only against a party with which it is in direct privity in the chain of payment orders[.]"). But HSBC USA had nothing to do with Plaintiffs or their transactions, so the issue is the absence of *causation*.

based on the jury's findings that Lehman Brothers satisfied all of First Alliance's financing needs and kept First Alliance in business after other investment banks stopped doing business with First Alliance. *Id*. In no way did the "ninth circuit *[sic]* specifically reject[]" Lehman Brothers' argument that "causation required it to have assisted each fraudulent mortgage transaction and not merely to have assisted the mortgage fraud business as a whole." Dkt. 143 at 13:2-5. Nor did the Ninth Circuit conclude that causation did not require a direct relationship to the fraudulent transactions. *Id.* at 13:10-13. Causation remains an element of all Plaintiffs' claims, and they have not shown that HSBC USA "was a substantial factor"—or any factor—"in causing the harm suffered." *Mosier v. Stonefield Josephson, Inc.*, 815 F.3d 1161, 1167-68 (9th Cir. 2016) (internal citation and quotations omitted) (affirming summary judgment of claims against accountants for aiding and abetting a Ponzi scheme for lack of causation).[3]

Finally, Plaintiffs argue that causation is supplied by HSBC USA's response to a subpoena issued by the California Department of Business Oversight. This argument recklessly mischaracterizes the subpoena, which requested records only of *WCM777 accounts with HSBC USA*. *See* Dkt. 145-5 at 9 ("Any and all bank records concerning WCM777 and World Capital Market Inc. bank accounts with HSBC BANK . . . ."). It is undisputed, as Plaintiffs knew when they made this baseless argument, that *WCM777 had no accounts with HSBC USA*. Dkt. 137-3 at ¶ 3. Thus, there were no documents to produce, as HSBC USA promptly and accurately responded. HSBC USA's truthful subpoena response caused no harm.[4]

---

[3]  *First Alliance* is factually distinguishable because the plaintiffs were, as in any normal case, suing the mortgage lender that actually provided their mortgages. For *First Alliance* to be factually like this case, the plaintiff-borrowers there would have had to sue mortgage lenders *other* than First Alliance, from whom they did *not* receive loans, just as Plaintiffs here have sued a bank *other* than the one(s) that executed their wire transfers.

[4]  Plaintiffs assert that HSBC USA's response to the subpoena "clearly inhibited the authorities" from "preventing all banks" from "allowing wire transfers to WCM777's accounts in HSBC Hong Kong." Dkt. 143 at 15:9-11. This assertion is characteristically untethered to the record.

In sum, Plaintiffs had to show through admissible evidence that HSBC USA caused them to invest or caused them to lose money or both. Plaintiffs cannot because HSBC USA did not. Summary judgment therefore should be granted.

## III.  UCC Article 4A Displaces Plaintiffs' Common Law Claims

Article 4A is the *exclusive* source of rights and remedies against a receiving bank. *Chino Commercial Bank, N.A. v. Peters*, 190 Cal. App. 4th 1163, 1174 (2010). Plaintiffs parrot the general principle, pointed out in HSBC USA's moving papers, Dkt. 137 at 24 n.6, that Article 4A does not displace *all* common law actions based on *all* activities surrounding wire transfers. That general principle is irrelevant here, because Plaintiffs base their claims on a theory that is covered by Article 4A. They assert that HSBC USA should not have executed intermediate wire transfer requests because the circumstances were suspicious. Article 4A covers and displaces claims based on that assertion. *Zengen, Inc. v. Comerica Bank*, 41 Cal. 4th 239, 254-55 (2007) (displacing under Article 4A a claim that due to suspicious circumstances the bank "should not have accepted and executed the fraudulent payment orders"); *Hunter v. Citibank, N.A.*, No. C 09-02079 JW, 2010 WL 2509933, at *6 (N.D. Cal. Feb. 3, 2010) (displacing under Article 4A a claim that the bank "should have further investigated the circumstances of the transfers and refused to execute them . . . because of a belief or suspicion that [to execute them] would violate [a contract] or constitute a breach of fiduciary duty").

Ignoring this, Plaintiffs make the circular, loaded argument that nothing in the UCC exempts banks from liability "when they are themselves complicit in fraud." Dkt. 143 at 15:24-25. There is, however, no evidence that HSBC USA was "complicit in fraud," and moreover, Plaintiffs' premise is wrong, because Article 4A *does* limit an intermediary bank's liability. The drafters made a "deliberate decision . . . to use precise and detailed rules to assign responsibility, define behavioral norms, allocate risks and *establish limits on liability* . . . ." UCC § 4A-102, Official Comment (emphasis added). Under this regime, "a receiving bank

cannot be held liable under common law theories for merely accepting a wire transfer." *Chino*, 190 Cal. App. 4th at 1174-75. Plaintiffs' claims invoke non-UCC state law to impose liability on HSBC USA where, under Article 4A, no liability exists; they are therefore displaced.[5]

Plaintiffs state that their claims "are not for accepting duly authorized wire transfers, but for processing those transfers knowing that it was facilitating a Ponzi scheme." Dkt. 143 at 16:11-13. Plaintiffs are talking in circles. Claims that a bank should not have executed a wire transfer order are exactly the kinds of claims Article 4A displaces. *Zengen*, 41 Cal. 4th at 254-55; *Hunter*, 2010 WL 2509933 at *6. And while Plaintiffs argue that "no provision of the UCC displaces a fraud action directly against a bank," Dkt.143 at 16:14-16, that is both irrelevant, because they assert no fraud claim "directly against a bank," and incorrect, because any common law claim purporting to impose liability on an intermediary bank that "should not have" executed a wire transfer is just what Article 4A displaces. In those cases where claims are allowed to proceed against a receiving bank, the facts invariably are that the bank took some additional action—usually for its own account—outside the wire transfer process. Dkt. 137 at 24-25.[6]

Plaintiffs allege that HSBC USA is liable for accepting wire transactions it "shouldn't have" because the circumstances were suspicious. Plaintiffs' theory of liability is inconsistent with Article 4A, so summary judgment is warranted.

---

[5] Plaintiffs cite the *general* displacement provision Article 1 of the UCC, but funds transfers are governed by Article 4A, which has specific displacement rules not applicable to the rest of the UCC. *See, e.g.*, UCC §§ 4A-212, 4A-209.

[6] For example, the bank in *Koss Corp. v. Am. Exp. Co.*, 233 Ariz. 74, 82 (2013) "kept the funds to pay the merchants associated with the charges *less fees earned by American Express on the charges*." (emphasis added.) As the court noted in *Chino*, the bank in *Sheerbonnet Ltd. v. Am. Exp. Bank, Ltd.*, 951 F. Supp. 403, 405-06 (S.D.N.Y. 1995) received the funds and "promptly offset them against debts . . . owed to [the bank]. In effect, [the bank] kept the funds that were supposed to go to Sheerbonnet." *Chino*, 190 Cal. App. 4th at 1175. Here, in contrast, HSBC USA is not alleged to have done anything but mechanically process wires—which is exactly the sort of claim that Article 4A displaces.

## IV. Summary Judgment Is Warranted on Plaintiffs' Aiding and Abetting Claims

### A. Plaintiffs Have Not Met the Actual Knowledge Element.

For "actual knowledge," Plaintiffs focus entirely on one of HSBC USA's anti-money laundering investigators, assigned to investigate the WCM777 Limited wire transfer, who reviewed a blog page and WCM777 Limited's website and noted that it "reasonably appeared" WCM777 Limited was engaged in a Ponzi scheme. These facts are undisputed—HSBC USA initiated a voluntary investigation and an investigator reviewed the internet and formed opinions (though Plaintiffs get the date wrong)—and it is a question of law whether an investigator's review of pages on the internet constitutes "actual knowledge of the primary violation" in which HSBC USA purportedly participated. *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1148 (2005).

For two reasons, HSBC USA's investigator's review of the internet does not satisfy the actual knowledge element of an aiding and abetting claim. *First*, the standard is *actual* knowledge of the *primary violation*. That means HSBC USA had to know that wire transfers from Plaintiffs to WCM777 Limited were not bona fide but were instead "investments" in a Ponzi scheme under fraudulent circumstances and in breach of alleged fiduciary duties. There is no evidence that HSBC USA knew any of that, particularly given that HSBC USA merely is alleged to have processed intermediary wire transactions, and WCM777 Limited and Plaintiffs were *not HSBC USA's customers*.[7]

The investigator's review of a blog and WCM777 Limited's website—while reasonable sources of information for a private party to decline to do business with another private party—cannot impart *actual knowledge* that WCM777 Limited was defrauding or breaching fiduciary duties to Plaintiffs such that the bank is exposed

---

[7] Because there were no wire transfers from Plaintiffs through HSBC USA, Plaintiffs' argument requires an entirely hypothetical analysis.

to tort liability. *Id.* at 1148-49 (holding the bank had no actual knowledge of the specific primary wrong despite allegations of depositor misconduct including "carrying large, unreported amounts of cash out of the bank in 'unmarked duffel bags'"). The lack of actual knowledge of the specific wrong is embedded in the investigator's conclusion itself, which references what he thought "reasonably appeared," *not* what *actually was*. Actual knowledge does not come solely from postings on the internet. *United States v. El-Mezain*, 664 F.3d 467, 496 (5th Cir. 2011); *Crochet v. Wal-Mart Stores, Inc.*, No. 6:11-01404, 2012 WL 489204, at *4 (W.D. La. Feb. 13, 2012).

*Second*, from a policy perspective, the rule Plaintiffs propose is unsound and unfair. Banks face *no* civil liability if they do *not* investigate potential fraud, *Casey*, 127 Cal. App. 4th at 1149-50 ("We pause to note that under California law, a bank owes no duty to nondepositors to investigate or disclose suspicious activities on the part of an account holder"), yet, if Plaintiffs have their way, banks *will* face multi-million dollar civil liability if they *do* investigate potential fraud. Indeed, under Plaintiffs' proposed rule, banks will be exposed if they so much as perform a Google search in furtherance of their investigation. The Court should not create this anomalous rule. Banks should be encouraged to investigate potentially fraudulent transactions by noncustomers, not punished for doing so. HSBC USA did the right thing in this case. It fairly and reasonably investigated a suspicious transaction involving a noncustomer and cut off that suspicious actor from utilizing bank resources in the future. The Court should not make that conduct actionable.

The Court should rule that HSBC USA did not have *actual knowledge* of a noncustomer's business dealings based on what was found on the internet. In the context of aiding and abetting, the internet surely can provide actual suspicion, but it cannot provide actual knowledge.

### B. Plaintiffs Have Not Met the Substantial Assistance Element.

On this undisputed record, no reasonable trier of fact could conclude that

HSBC USA "'reach[ed] a *conscious decision to participate in tortious activity* for the purpose of assisting another in performing a wrongful act'" or "'knew that a tort had been, or was to be, committed, and acted *with the intent of facilitating the commission of that tort*.'" *Id.* at 1146 (citations omitted). HSBC USA did not substantially assist WCM777 Limited, HSBC USA flagged, investigated, and affirmatively *blocked* it from future transactions. There is no evidence that HSBC USA consciously decided or acted with the intent to facilitate any tort against Plaintiffs or anyone else. This necessitates summary judgment.

Plaintiffs' reliance on HSBC USA's response to the California Department of Business Oversight subpoena is specious. As discussed earlier, HSBC USA responded promptly and accurately. Plaintiffs' assertion that accepting other people's intermediary wire transfers "provided substantial funds *necessary for the perpetuation of the WCM777 Ponzi scheme*," Dkt. 143 at 14:9-10 (emphasis added), also is baseless. As an intermediary bank, HSBC USA did not "provide" any funds to WCM777 Limited; it accepted wire transfer orders from the banks of the originators in the wire transfer chain. There is no evidence that HSBC USA was "necessary for the perpetuation" of the Ponzi scheme, there is only evidence that HSBC USA was *not* necessary for any of Plaintiffs' wire transfers. And as discussed in the moving papers, Plaintiffs' attempt to expand aiding and abetting liability to entities *not* involved in the transaction is an unprecedented and impermissible undertaking. *El Camino Res., LTD. v. Huntington Nat'l Bank*, 722 F. Supp. 2d 875, 914 (W.D. Mich. 2010) ("In the words of plaintiffs' counsel, the bank is liable if it helped to 'perpetuate the enterprise.' [] One might as easily hold the grocer liable for aiding and abetting Al Capone, on a showing that the grocer suspected Capone was a hoodlum but sold him food anyway, allowing him to live another day to commit his crimes."), *aff'd,* 712 F.3d 917 (6th Cir. 2013).

In sum, the conclusion that HSBC USA's processing of wire transfer orders as an intermediary bank was "necessary for the perpetuation of the WCM777

Ponzi scheme" is flat-out speculation that will not defeat a motion for summary judgment. And that speculation is eclipsed by the critical fact that HSBC USA *blocked* WCM777 Limited from transactions once it concluded an investigation and decided it did not want to do business with WCM777 Limited. "'[T]he caselaw *[sic]* is clear that opening accounts and approving transfers, even where there is a suspicion of fraudulent activity, does not amount to substantial assistance.'" *In re Consol. Meridian Funds*, 485 B.R. 604, 624 (Bankr. W.D. Wash. 2013) (quoting *In re Agape Litig.*, 681 F. Supp. 2d 352, 365 (E.D.N.Y. 2010)). Certainly, then, affirmatively acting to thwart fraudulent activity based on suspicion cannot be substantial assistance. Summary judgment on this element is appropriate.

### C. Plaintiffs Failed to Establish a Fiduciary Relationship.

No evidence supports the conclusion that Plaintiffs were in a fiduciary relationship with WCM777 Limited. There is no evidence that Plaintiffs even *met* anyone associated with WCM777 Limited. Instead, the evidence is the opposite: Mendez dealt only with his father; Giron was offered a suspicious transaction by strangers; and Herrera went to a marketing seminar at a hotel. The only arguable fiduciary relationship is between Mendez and his father, but that does not extend to WCM777 Limited. Other than that, none of the trappings of a fiduciary relationship exist. *Peterson Dev. Co. v. Torrey Pines Bank*, 233 Cal. App. 3d 103, 119 (1991) (holding that bank "fell into the usual category of an arm's-length, adverse, normal commercial banking transaction"); *Worldvision Enters., Inc. v. Am. Broad. Cos.*, 142 Cal. App. 3d 589, 595 (1983) ("The mere fact that in the course of their business relationships the parties reposed trust and confidence in each other does not impose any corresponding fiduciary duty in the absence of an act creating or establishing a fiduciary relationship known to law.").

Whether WCM777 Limited and its principal Phil Xu consented to judgment in another lawsuit does not create a fiduciary relationship with Plaintiffs. No evidence supports the assertion that WCM777 Limited—or anyone else—was an

investment advisor to Plaintiffs as that term is defined under law. And Plaintiffs' assertion that "[t]he relationship between a director and the company members is likewise a fiduciary relationship," Dkt. 143 at 17:6-10, is an irrelevant non-sequitur; there is no proof that Plaintiffs were "members" of "the company." There was no fiduciary duty to breach, warranting summary judgment.[8]

### D. The Elements of Common Law Fraud Are Not Met.

There is no evidence that any of the people Plaintiffs spoke to made any representations that originated with anyone but themselves. Plaintiffs spoke to their relatives (Mendez), strangers in a bar (Giron), and friends and seminar hosts (Herrera). These people were recruiters, out to make money for themselves; they all said different things in different ways. No admissible evidence—no script, no signed contract, no brochure—connects them to the entity WCM777 Limited, such that corporate fraud liability could attach. As far as the record is concerned, each recruiter made up their own sales pitch—after all, they are all different—with no input from or even connection to statements by WCM777 Limited. Plaintiffs completely failed in their proof.

Nor is there evidence of reasonable reliance by Plaintiffs. To be sure, the evidence shows that Plaintiffs *relied on the chance to make money*; but it does not show reliance on any misrepresentation that legally is attributable to WCM777 Limited. The Court should grant summary judgment on Plaintiffs' aiding-and-abetting fraud claim.

### V. Summary Judgment Is Warranted on Plaintiffs' UCL Claim

Plaintiffs concede restitution is unavailable, but claim they are entitled to an unprecedented, mandatory "public injunction" against HSBC USA relating to

---

[8] Plaintiffs' reliance on the unpleaded "trust-fund doctrine" also goes nowhere. That doctrine protects creditors of an insolvent corporation from fraudulent transfers. *Berg & Berg Enters., LLC v. Boyle*, 178 Cal. App. 4th 1020, 1041 (2009) ("no broad, paramount fiduciary duty of due care or loyalty that directors of an insolvent corporation owe the corporation's creditors solely because of a state of insolvency"). It has no application to these facts.

hypothetical future determinations of fraud by nonparties over the next five years. Dkt. 143 at 21:13-22. This is Plaintiffs' most outrageous request yet: an order that "HSBC USA shall discontinue all services to any entity or person that it has determined is likely engaged in fraud [], shall notify the correspondent bank counterparty that has the direct relationship to the entity that it has determined the entity to be likely engaging in fraud and [] that for a period of 5 years HSBC USA report to the Court under seal all such notifications of likely fraud to correspondent bank counterparties." Dkt. 143 at 21:16-22.[9]

This relief is unsupported by law and lacks any factual basis. Injunctive relief is unavailable because the underlying activity Plaintiffs complain of cannot be repeated: WCM777 Limited does not exist. This request for relief also appears for the first time in Plaintiffs' opposition brief and does not meet the criteria for amendment out of time, so it should not be a basis to deny summary judgment. *See, e.g.*, *Bullard v. Wastequip Mfg. Co.*, No. CV-14-01309 MMM (SSx), 2015 WL 12766467, at *12 (C.D. Cal. Apr. 14, 2015). No UCL remedy is available, requiring summary judgment on this claim.

## VI. Conclusion

For these reasons, HSBC USA respectfully requests summary judgment on all Plaintiffs' claims.

Dated: October 23, 2017

Respectfully submitted,

KATTEN MUCHIN ROSENMAN LLP

By:    /s/ Gregory S. Korman
    Attorneys for Defendant HSBC Bank USA, N.A.

---

[9] No one plausibly could think this is an available remedy. Plaintiffs have crossed the line into Rule 11 territory.