O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMIRO GIRON, NICOLAS J. HERRERA, ORLANDO ANTONIO MENDEZ<br><br>Plaintiffs,<br><br>v.<br><br>HONG KONG AND SHANGHAI BANK COMPANY, LTD., a foreign company, HSBC BANK USA, N.A., a national banking association; and DOES 1-100, inclusive<br><br>Defendants. | Case No. 2:15-cv-08869-ODW(JC)<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO CERTIFY CLASS [126]; DENYING, AS MOOT, DEFENDANT'S MOTION FOR SANCTIONS [135]; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [137]; & DENYING, AS MOOT, PLAINTIFFS' MOTION TO STRIKE & EXCLUDE [142]** |

## I.    INTRODUCTION

Plaintiffs Ramiro Giron, Nicholas J. Herrera, and Orlando Antonio Mendez ("Plaintiffs") allege that they wired money to the bank accounts of a Ponzi scheme they refer to as "WCM777." WCM777 held accounts at Hong Kong and Shanghai Bank Company, Ltd. ("HSBC Hong Kong"). The Court previously dismissed HSBC Hong Kong from this action for lack of personal jurisdiction. (ECF No. 72.) The only remaining defendant is HSBC Bank USA, N.A. ("HSBC USA").

1

Plaintiffs seek to represent a putative class of individuals who "invested and lost money with any of the WCM777 entities by transferring or having their money transferred to one of the WCM777 accounts at HSBC Hong Kong." (Third Amended Complaint ("TAC") ¶ 80, ECF No. 54.) The named plaintiffs did not own an account with HSBC USA, and did not wire transfer any money through HSBC USA. Instead, they allege HSBC USA is liable because it wire transferred *other people's money* to WCM777's HSBC Hong Kong bank accounts. Plaintiffs argue that because HSBC USA provided a way for other victims to wire money to the fraudulent scheme, they aided and abetted WCM777's fraudulent activities.

Before the Court are four motions: Plaintiffs' Motion to Certify Class (ECF No. 126); Defendant's Motion to Strike and Exclude Evidence in support of Plaintiffs' Motion to Certify Class (ECF No. 135); Defendant's Motion for Summary Judgment (ECF No. 137); Plaintiffs' Motion to Strike & Exclude Evidence in support of Defendant's Motion for Summary Judgment.[1] (ECF No. 147.) For the reasons set forth below, the Court **DENIES** Plaintiffs' Motion to Certify Class (ECF No. 126), **DENIES, AS MOOT**, Plaintiffs' and Defendant's motions to exclude evidence (ECF Nos. 135, 147), and **GRANTS** Defendant's Motion for Summary Judgment. (ECF No. 137.)

## II. FACTUAL BACKGROUND

Plaintiffs Giron, Herrera, and Orlando Mendez[2] wired money to the Hong Kong bank accounts of a Ponzi scheme they refer to as "WCM777." (HSBC USA's Separate Statement of Uncontroverted Facts ("UF") 1, ECF No. 137.) Plaintiffs claim that HSBC USA "served as the intermediary bank for numerous wire transfers from investor-victims of WCM777 to accounts at HSBC Hong Kong." (UF 2.) Plaintiffs' theory of liability is that by wiring money that supported WCM777's fraudulent operations to HSBC Hong Kong, HSBC USA aided and abetted WCM777 in

---

[1] On November 9, 2017, the Court held a hearing on all four motions. (ECF No. 174.)

[2] Orlando Mendez's father, Demetrio, is also discussed herein, so the Court refers to the Mendezes by their first name for clarity.

perpetuating its scheme, and should be held liable for Plaintiffs' losses, even if they did not have any direct contact with HSBC USA. (UF 3; Opp'n 16–17 "Plaintiffs argue that the law allows for causation as to any victim who invested after [HSBC USA allegedly knew of the scheme], not just those whose money flowed through HSBC USA.")

Plaintiffs do not hold accounts with HSBC USA, and none of them wired money through HSBC USA. (UF 64–67.)[3]

## A. Procedural Background

On January 11, 2016, Plaintiffs filed an Amended Class Action Complaint alleging five claims for relief against HSBC USA and HSBC Hong Kong, including: (1) aiding and abetting fraud; (2) aiding and abetting breach of fiduciary duty; (3) aiding and abetting an endless chain scheme; (4) violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c); and (5) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq. (Amended Complaint ("AC") ¶¶ 88–129, ECF No. 15.) Plaintiffs subsequently filed additional amended complaints, and Defendants filed responsive pleadings challenging the sufficiency of Plaintiffs' allegations. (ECF Nos. 25, 34.)

On June 29, 2016, the Court granted HSBC USA's Motion to Dismiss, with prejudice, as to Plaintiffs' claims for aiding and abetting an endless chain scheme and RICO violations. (ECF No. 46.) The Court also dismissed Plaintiffs' UCL claim with leave to amend, and held that Plaintiffs had sufficiently alleged claims for aiding and abetting fraud and breach of fiduciary duty. (*Id.*)

---

[3] Plaintiffs dispute these facts, but on the basis of inadmissible evidence and attorney argument. (*See* HSBC USA's Reply Separate Statement 66–73, ECF No. 158.) The Court addresses these objections in Section II.D. In any event, each Plaintiff testifies in their respective declarations that they wired money to WCM777's account from their own bank accounts, not through HSBC USA. (Decl. of Ramiro Giron ("Giron Decl.") ¶ 5, ECF No. 143-29; Decl. of Nicolas Herrera ("Herrera Decl.") ¶¶ 2, 5, 7, ECF No. 143-30; Decl. of Orlando Mendez ("Orlando Decl.") ¶ 2, ECF No. 143-31.) The evidence Plaintiffs submit to oppose these facts does not create a genuine dispute whether the named plaintiffs wired money through HSBC USA in light of their own declarations establishing they wired their money through their own personal bank accounts.

On July 28, 2016, Plaintiffs filed their Third Amended Complaint ("TAC"), which is the operative complaint. (ECF No. 54.) Plaintiffs moved for leave to file a fourth amended complaint on November 23, 2016. (ECF No. 82.) Plaintiffs did not seek to replace the class representatives at this time.[4] (*Id.*) Instead, they sought to add a claim for violation of California Penal Code section 496, which they had "recently learned, allows any person who has been injured by a violation of section 496(a) to recover three times the amount of actual damages, costs of suit and attorney's fees in a civil suit." (Not. of Mot. 2, ECF No. 82.) The Court denied Plaintiffs' request on January 31, 2017. (ECF No. 90.)

On August 18, 2016, HSBC Hong Kong moved to dismiss Plaintiffs' TAC for insufficient service of process, and lack of personal jurisdiction. (*See generally* ECF No. 34.) After the parties briefed the motion, the Court dismissed HSBC Hong Kong, and held that Plaintiffs had not established HSBC Hong Kong was subject to personal jurisdiction, and denied Plaintiffs leave to conduct jurisdictional discovery. (ECF No. 72.) Accordingly, HSBC USA is the only defendant. (*Id.*)

Plaintiffs' only remaining claims against HSBC USA are: 1) aiding and abetting fraud (TAC ¶¶ 89–95); 2) aiding and abetting breach of fiduciary duty (*Id.* ¶¶ 96–105); and 3) violation of California Business & Professions Code § 17200 et seq. (*Id.* ¶¶ 106–15.)

**B.     WCM777's Ponzi Scheme & Plaintiffs' Roles**

WCM777 represented itself as a highly profitable multi-level marketing platform based on "cloud" services. (Plaintiff's Additional Material Facts "PAMF" 1, ECF No. 143-1.) WCM777 claimed that investors could earn exorbitant rates of return by referring new members, or by earning passive income based on the purchase

---

[4] This is relevant because, at the hearing on the Motion to Certify Class, Plaintiffs' counsel represented that one of the reasons they had not amended their complaint to include better suited class representatives was because the Court had issued a scheduling order precluding amendment of their complaint. However, even when they moved to amend the complaint in November 2016, they did not seek to change the class representatives. (*See* ECF No. 82.)

of "units." (*See* UF 10.) Plaintiffs claim that WCM777 targeted individuals using "Christian imagery and high-tech buzzwords." (Opp'n 2, ECF No. 143.) In March 2014, the Securities Exchange Commission filed an action in federal court against WCM777 and related companies, which ultimately led to the downfall of the WCM777 Ponzi scheme. (*See* Plaintiffs' Request for Judicial Notice ("PRJN") ¶¶ 1–3, Exs. 1-3, ECF No. 143-3, 143-4, 143-5.)[5]

While the three named Plaintiffs all came to invest in WCM777 in slightly different ways, there are a few important and undisputed facts that they all have in common:

**Ramiro Giron**: After deciding to invest in WCM777, Giron "wired from [his] *Bank of America account* $8,000 to WCM777's bank account held at HSBC Bank Hong Kong, account number 817677826838." (Decl. of Ramiro Giron ("Giron Decl.") ¶ 5, ECF No. 143-29 (emphasis added).) Giron received a remittance transfer receipt that identified Bank of America, N.A. as the transferring institution, WCM777 as the recipient, and HSBC Hong Kong as the recipient bank. (*Id.* Ex. A.) When Giron went to his bank to wire the money, his personal banker asked him "[i]f [he] was sure [he] wanted to send the money, because once the money was sent [Bank of America was] not responsible." (UF 16.[6]) He wired the money despite his suspicions, and the banker's warning, because he had been shown earnings related to a WCM777

---

[5] Plaintiffs request that the Court take judicial notice of pleadings in an action by the Securities Exchange Commission against WCM777, and several other documents. HSBC USA objects to the Court taking notice of these documents. (HSBC USA's Mem. of Evid. Obj. in Resp. to Plaintiffs' Statement of Genuine Issues in Opp'n to Mot. for Summary Judgment, ECF No. 156-1.) The Court addresses those objections, to the extent relevant, in Section II.D.

[6] Plaintiffs claim to dispute this fact, and many others, by stating, "[i]t is disputed that Mr. Giron risked money in an investment. One cannot invest in a Ponzi scheme." *See, e.g.*, Statement of Genuine Issues in Opposition to Motion for Summary Judgment 8, ECF No. 143-1.) While this is Plaintiffs' argument, it does not create a triable issue of disputed fact, and, in any event, it is not material. *See British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978) ("[L]egal memoranda and oral argument are not evidence, and they cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion where no dispute otherwise exists.").

investment by the individuals who introduced WCM777 to him weeks earlier in a bar. (*See* UF 4–10,[7] 17.)

Giron does not have an account with HSBC USA, and there are no records of him ever transferring any money to WCM777 from HSBC USA. (UF 64–66.)

**Nicolas Herrera**: Herrera decided to invest $2,000 with WMC777, and "wire transferred the money through [his] account with *Wells Fargo* bank on or about November 12, 2013[,] to HSBC Hong Kong account 817697832838." (Decl. of Nicolas Herrera ("Herrera Decl.") ¶¶ 2, 5, 7, ECF No. 143-30 (emphasis added); UF 55.) He also received a "Combined Disclosure for Outgoing Consumer International Wire Transfers" form that identified Wells Fargo as the transferring bank, Agape Technology Limited as the recipient,[8] and HSBC Hong Kong as the beneficiary bank. (Herrera Decl. ¶ 7, Ex. A.) When wiring the money, Herrera's banker asked him things like, "Where are you sending the money?" and "What is this? Do you know what it is?" (UF 56.)

Herrera admits to not having any contact with HSBC USA in the past ten years. (UF 62.)

**Orlando Antonio Mendez**: Orlando invested $10,000 of his own money, and $30,000 of his father's savings (collectively "Family Money"), in WCM777, after being convinced by his father, Demetrio Mendez, to invest.[9] (Decl. of Orlando Mendez ("Orlando Decl.") ¶ 2, ECF No. 143-31.) Demetrio also "convinced [Orlando] to be a named Plaintiff in this matter because [he] spoke good English and

---

[7] Plaintiffs dispute these facts, but only to the extent that each fact "implies that Mr. Giron was not presented the WCM777 sales pitch…." Whether Giron was presented the WCM777 sales pitch is not material to the Court's finding that Plaintiffs have not connected HSBC USA's actions to the harm they suffered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (explaining that an issue is "material" where the resolution of that issue might affect the outcome of the suit under the governing law).

[8] Agape Technology Limited is a company name used by the WCM777 enterprise.

[9] The Court refers to the Mendezes by their first names for clarity. In Demetrio's declaration, he refers to his son as "Antonio Mendez." (Demetrio Decl. ¶ 2, ECF No. 143-28.) The Court interprets "Antonio Mendez" and "Orlando Antonio Mendez" as the same person.

introduced [him] to his lawyer Julio J. Ramos." (*Id.*) Orlando "wire transferred the [F]amily [M]oney through [his] account with *Tri-counties bank* on or about December 11, 2013[,] to HSBC Hong Kong account 817677826838." (*Id.* (emphasis added); UF 33.) Orlando received an "Outgoing FED Message" that memorialized the transfer, and identified WCM777 as the beneficiary, and HSBC Hong Kong as the beneficiary bank. (Orlando Decl. ¶ 8, Ex. A.)

Orlando does not know what HSBC USA is, and has never communicated with anyone at HSBC USA. (Orlando Dep. 32:22-33:11, ECF No. 137-2.)

## C.    HSBC USA's Alleged Role[10]

In December 2012, HSBC USA entered into a deferred prosecution agreement with the United States relating to its money-laundering-prevention policies. (PAMF 8.) As part of this agreement, HSBC USA implemented a computer system that monitors thousands of wire transfers a day for suspicious activity. (UF 68–69.)

Plaintiffs contend that HSBC USA had actual knowledge of the fraudulent nature of WCM777's business as a result of HSBC USA's monitoring activities. (Opp'n 4–5.) In August 2013, HSBC USA identified a suspicious wire transfer of approximately $120,000 from New Better Life Foundation to WCM777's account at HSBC Hong Kong. (UF 69.) The word "foundation" triggered the alert because it is often associated with money laundering activities. (UF 70.)

As part of its investigation, HSBC USA researched both New Better Life Foundation and WCM777. (UF 71.) The investigators conducted internet research, and concluded that WCM777 had a "high risk nature." (UF 74.) Plaintiffs point to internal documents that state that WCM777 "pretty much resembles that of your typical Ponzi scheme," (Decl. of Paul Khareyn ("Khareyn Decl.") ¶ 11, Ex. 3 (Bates

---

[10] The parties dispute some of the facts discussed in this section—mainly those facts regarding HSBC USA's actual knowledge of the fraud. However, because the Court finds summary judgment is appropriate because Plaintiffs present no evidence of causation, these disputes are not material to the Court's ruling. Accordingly, the Court recites these facts to provide a fulsome discussion of the parties' arguments.

Stamped HBUS000648–650), ECF No. 136-3) and that it "reasonably appeared that [WCM777 is] engaged in pyramid/Ponzi scheme as they offer no concrete underlying products/services while offering guaranteed 'daily' profit/returns by buying multi-level shares." (Khareyn Decl. ¶ 11, Ex. 1 (Bates Stamped HBUS000615), ECF No. 136-3.) As a result of this investigation, HSBC USA determined that it acted as an intermediary bank for wire transfers to WCM777's HSBC Hong Kong account totaling approximately $15 million between October 2013 and January 2014. (PAMF 13.) None of these transfers, however, relate to Plaintiffs. (UF 64–66.)

During this same period, the California Department of Business Oversight (the "Department") subpoenaed HSBC USA in relation to its independent investigation of WCM777. (ECF No. 145-5.) The subpoena requested "[a]ny and all bank records concerning WCM777 and World Capital Market Inc. bank accounts with [HSBC USA]…." (ECF No. 145-5 at 9.) HSBC USA responded that it did not have any responsive documents. (Letter from HSBC Corporations Counsel 11, ECF No. 145-5.) HSBC USA claims that because WCM777 did not have any bank accounts at HSBC USA, there were no such documents. (Reply 4, ECF No. 156; Annunziata Decl. ¶ 3, ECF No. 137-3.)

HSBC USA ultimately determined that it should not continue to act as an intermediary for wire transfers to WCM777's account at HSBC Hong Kong because it considered it too risky. (UF 77.) HSBC USA contends it did not have actual knowledge of WCM777's fraudulent scheme, however.

**D.    Requests for Judicial Notice & Evidentiary Issues**

Both parties submitted voluminous objections to evidence submitted in support of, and in opposition to, the four motions at issue. The Court addresses the objections that are pertinent to its ruling below.

8

*1.*      *Plaintiffs' Objections to Declaration of Nicole Annunziata (ECF No.*
         *143-32)*

Annunziata is a Legal Paper Regulatory Specialist, and is employed by HSBC Technology & Services (USA) Inc., which is an affiliate of HSBC USA. (Annunziata Decl. ¶ 1, ECF No. 137-3.) She is familiar with HSBC USA's books and records, and regularly relies on them. (*Id.* ¶ 2.) She searched HSBC USA's records to determine whether Plaintiffs or WCM777 had any accounts with HSBC USA within the last five years, and did not find any such accounts. (*Id.* ¶ 3.) She also regularly searches and relies on records of wire transfers. (*Id.* ¶¶ 5–6.) She conducted searches for wire transfers involving certain account numbers provided by Plaintiffs to determine whether Plaintiffs made any wire transfers to those accounts. (*Id.* ¶¶ 7–15.) She did not find any records of transfers. (*Id.* ¶ 15.)

Plaintiffs assert several objections to Annunziata's declaration in its entirety:

**Best Evidence Rule**: Plaintiffs argue that because Annunziata relies on reviewing documents in coming to the conclusion that there were no wire transfer records, then she must introduce those records into evidence. (ECF No. 143-32, at ¶ 1.) The best evidence rule "applies when the contents of a writing are sought to be proved, not when records are searched and found not to contain any reference to the designated matter." *United States v. Valdovinos-Mendez*, 641 F.3d 1031, 1035 (9th Cir. 2011) (citing Fed. R. Evid. 1002). The Court **OVERRULES** Plaintiffs' objection on these grounds.

**Relevance**: Plaintiffs state that they "have never alleged to be customers of HSBC USA." (ECF No. 143-32, at ¶ 4.) Whether Plaintiffs are customers of HSBC USA is probative of causation, and the Court **OVERRULES** this objection.

**Authentication, Foundation, & Hearsay**: Plaintiffs object that Annunziata has no personal knowledge to testify that "a document not attached to the declaration is what she declares it to be and contains the information she declares it to contain." (ECF No. 143-23, at ¶¶ 5, 6.) Annunziata's declaration is being used to prove the

absence of a record, not the contents of one.  It is her testimony that establishes the absence of the record, and she may obtain personal knowledge from business records.  *See, e.g.*, *Banga v. First USA, N.A.*, 29 F. Supp. 3d 1270, 1274 n.2 (N.D. Cal. 2014) ("[P]ersonal knowledge can come from the review of the contents of business records and an affiant may testify to acts that she did not personally observe but which have been described in business records[.]").  Annunziata also lays proper foundation establishing the records she reviewed as business records.  (Annunziata Decl. ¶¶ 1–6, 9, 11.)  Accordingly, the Court **OVERRULES** this objection.

Plaintiffs also object to specific paragraphs of Annunziata's declaration:

**Objection to Paragraphs 9–14**:  Plaintiffs argue that these statements are hearsay or double hearsay because they are all based on information told to her by the "Data Payment Warehouse," and the "Payments Regional Development Team."  (ECF No. 143-32, at ¶ 2.)  Annunziata laid proper foundation to establish the records she reviewed are business records, and thus not excluded by the hearsay rule.  (*See* ECF No. 137-3, at ¶¶ 1–6, 9, 11); Fed. R. Evid. 803(6).  She relied on her review of those business records, and a declarant may review business records to establish personal knowledge of a particular issue.  *Banga*, 29 F. Supp. 3d at 1274 n.2; *Deleon v. Time Warner Cable LLC*, No. CV 09-2438-AG (RNBx), 2010 WL 115152279, at *2 (C.D. Cal. Apr. 12, 2010) (overruling hearsay and personal knowledge objections where declarant reviewed business records to prepare her declaration).  Accordingly, the Court **OVERRULES** this objection.

**Objection to Paragraphs 14–15**:  Plaintiffs object that these statements are "misleading," and discuss the fact that the name "Jurado" appears in a document purporting to reflect all transactions to WCM777's account, despite Annunziata's testimony that there were no such transactions.  (ECF No. 143-32, at ¶ 3.)  To the extent this is a factual argument disputing the veracity of Annunziata's declaration, Plaintiffs provide no citation to evidence contradicting Annunziata's declaration.  Accordingly, the Court **OVERRULES** this improper evidentiary objection.

Furthermore, the Court is not required to scour the record to discover a disputed fact. *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1058 (9th Cir. 2009) (quoting *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) ("[T]he reviewing court is 'not required to comb through the record to find some reason to deny a motion for summary judgment….'")).

### 2. Plaintiffs' Requests for Judicial Notice

Plaintiffs request that the Court take judicial notice of several documents. (Plaintiffs' Request for Judicial Notice ("PRJN"), ECF No. 143-2.)

#### a. Exhibits One through Eight

The Securities Exchange Commission ("SEC") filed an action against several WCM777 entities and Ming Xu aka Phil Ming Xu, the mastermind behind the Ponzi scheme. Exhibits one through six include documents related to that case, United States District Court, Central District of California, Case No. 2:14-cv-02334 ("SEC Action"). (*Id.*) In a similar vein, Plaintiffs request that the Court take judicial notice of a deferred prosecution agreement executed by HSBC USA and HSBC Holdings PLC in an action in the United States District Court for the Eastern District of New York. (PRJN Ex. 7, ECF No. 143-9.) For all these exhibits, Plaintiffs claim they "are a proper subject for judicial notice pursuant to Federal Rules of Evidence, Rule 201(b)(1) and (2) as documents published within the United States District Courts and State Administrative bodies, [and] the locations of these documents are facts 'generally known within the trial court's jurisdiction' and/or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" (PRJN 3–4, ECF No. 143-2.) HSBC USA objects that the Court may not take judicial notice of the facts contained within the documents, that the documents are hearsay not falling within an exception, and that they are not authenticated. (*See* HSBC USA's Mem. of Evid. Obj. in Resp. to Plaintiffs' Statement of Genuine Issues in Opp'n to Mot. for Summary Judgment, ECF No. 156-1.)

Throughout their Opposition to Defendant's Motion for Summary Judgment, Plaintiffs seek to use the facts contained within the various pleadings to prove the truth of the matter asserted. For example, they seek to use the facts of the Complaint and Consent to Judgment in the SEC Action because they claim Xu did not "even deny that he and [WCM777] 'falsely represented that WCM777 is and was a profitable enterprise, when in fact it [was] a pyramid scheme….'" (Opp'n 13, ECF No. 143.) However, the Consent Judgment specifically states: "Without admitting or denying the allegations of the Complaint (except as to [the paragraph affirming there were no representations by the government outside of the agreement] and except as to personal and subject matter jurisdiction, which Defendant admits), Defendant hereby consents to an entry of judgment….'" (PRJN Ex. 2, ECF No. 143-4.) These facts, and the others in the pleadings Plaintiffs submit, are subject to dispute, and the Court cannot take judicial notice of the contents of the documents. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (holding judicial notice improper where the contents of the document may reasonably be subject to dispute); *see also Leonard Roofing, Inc. v. Ironshore Specialty Ins. Co.*, No. EDCV 12–00156-VAP (DTBx), 2013 WL 12129653, at *5 (C.D. Cal. Mar. 29, 2013) (quoting *Peel v. BrooksAmerica Mortg. Corp.*, 788 F. Supp. 2d 1149, 1158 (C.D. Cal. 2011)) (explaining that when taking judicial notice of documents, "the Court may not…accept as true the facts found or alleged in such documents…"). Plaintiffs also fail to lay any foundation establishing that the documents fall within any exception to the hearsay rule. The Court takes judicial notice of the fact that the events discussed in Exhibits one through eight occurred, but does not take judicial notice of the contents of the documents. *See Lee*, 250 F.3d at 689. Accordingly, the Court **SUSTAINS** HSBC USA's objections to Plaintiffs' Request for Judicial Notice exhibits one through eight.

b. Exhibits Nine and Ten

Exhibit nine is an "instruction sheet for wire transfers to [HSBC Hong Kong's] clients." (PRJN ¶ 9, ECF No. 143-2.) Plaintiffs claim they obtained this document

12

from HSBC Hong Kong's website.  (*Id.*)  Exhibit ten is a Patriot Act Certification for HSBC Hong Kong for which they provide a "Google pathway" to access the document.  (*Id.* ¶ 10.)  The Patriot Act Certification identifies HSBC USA as a correspondent account for HSBC Hong Kong.  (*Id.*, Ex. 10.)  HSBC USA objects to these documents on the same grounds they object to Exhibits one through eight.  It also asserts that Exhibit nine is not relevant because whether HSBC Hong Kong has one or more correspondent banks in the United States does not affect whether HSBC USA can be held liable.

Plaintiffs claim these documents are judicially noticeable because "they are information posted on the Website of the HSBC Group."  (PRJN 4 (citing *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010).)  In *Von Saher*, the court took judicial notice of newspaper articles "as an indication of what information was in the public realm at the time."  *Von Saher*, 592 F.3d at 960.  Plaintiffs, however, rely on Exhibit ten for the truth of the matter asserted—that HSBC USA was the only correspondent bank for HSBC Hong Kong.  (See Plaintiffs' Additional Material Facts ("PAMF") 22.)  Similarly, Plaintiffs rely on Exhibit nine to prove that "HSBC Hong Kong told all customers to have payments in U.S. Dollars for accounts held in U.S. Dollars [sic] to send them through HSBC USA."  (PAMF 23.)  The Court cannot take judicial notice of these exhibits for the purposes Plaintiffs seek to use them.  *See Lee*, 250 F.3d at 689.  Accordingly, the Court **SUSTAINS** these objections.

Although Plaintiffs fail to make this argument, to the extent that these documents could be construed as a party-opponent admission pursuant to Federal Rule of Evidence 801(d)(2), they are still insufficient to create a genuine disputed material fact.  That HSBC USA was one way to wire money to HSBC Hong Kong does not create a triable issue of material fact, especially where Plaintiffs wired their money through their own banks.

## III.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HSBC USA moves for summary judgment on several grounds: 1) Plaintiffs fail to establish causation because HSBC USA did not wire their money; 2) Plaintiffs' claims are displaced by Article 4A of the UCC, which sets forth the liability scheme for electronic funds transfers; 3) Plaintiffs failed to submit evidence of HSBC USA's actual knowledge of WCM777's fraudulent activities; 4) Plaintiffs cannot prove their underlying tort claims, which they claim HSBC USA aided and abetted; and 5) Plaintiffs are not eligible for injunctive relief or restitution to support their UCL claim. (Notice of Mot., ECF No. 136-7.)

Because the Court finds that the issue of causation is dispositive, it focuses its discussion on the parties' causation arguments.

### A.    Legal Standard on Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing law, the resolution of that fact might affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 249.

A party seeking summary judgment bears the initial burden to establish the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. To satisfy this burden, the moving party may simply point to portions of pleadings, admissions, answers to interrogatories and depositions which, along with affidavits, show the absence of a genuine issue of material fact. *See id.* If the moving party satisfies its burden, the nonmoving party must produce specific evidence to show that a genuine dispute exists. Fed. R. Civ. P. 56(e). The Court draws all inferences in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). However, the nonmoving party "must

do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

The "'party opposing summary judgment must direct [the court's] attention to specific, triable facts,' [citation], and the reviewing court is 'not required to comb through the record to find some reason to deny a motion for summary judgment." *Gordon*, 575 F.3d at 1058 (citations omitted); *see also Orr v. Bank of America, NT & SA*, 285 F.3d 764, 775 n.14 (9th Cir. 2002) (holding a court may disregard evidence submitted in opposition to a motion for summary judgment where opposing party does not adequately cite specific pages of the evidence).

**B.     Plaintiffs' Claims All Require Proof of Causation**

In California, a party may be liable for the aiding and abetting of an intentional tort where the party "knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act." *Casey v. U.S. Bank National Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005) (quoting *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325–26 (1996)). Courts typically require a plaintiff to prove "actual knowledge" and substantial assistance. *See id.* at 1144–46.

"[C]ausation is an essential element of an aiding and abetting claim, i.e., plaintiff must show that the aider and abettor provided assistance that was a substantial factor in causing the harm suffered." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1135 (C.D. Cal. 2003) (citing *Metge v. Baehler*, 762 F.2d 621, 624 (8th Cir.1985)); *Impac Warehouse Lending Grp. v. Credit Suisse First Boston LLC*, 270 F. App'x 570, 572 (9th Cir. 2008) ("Substantial assistance requires that the defendants' actions be a 'substantial factor' in causing the plaintiff's injury.").

Plaintiffs' UCL claim also requires proof of causation. *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 326 (2011) (discussing causation requirement derived from "as a result of" language in UCL statute).

**C.  Plaintiffs Do Not Submit Evidence of Causation**

"Plaintiffs argue that the law allows for causation as to any victim who invested [in WCM777] after September 30, 2013, [the date HSBC USA allegedly was aware of the scheme], not just those whose money flowed through HSBC USA."  (Opp'n 16–17.)  To the extent the Court disagrees, Plaintiffs request leave pursuant to Federal Rule of Civil Procedure 56(d) to conduct further discovery to "obtain the underlying documents upon which Defendant basis [sic] its assertion that none of the Plaintiffs' money went through HSBC USA."  (*Id.*)

Plaintiffs argue that HSBC USA is liable under three possible factual scenarios:

1. HSBC USA aided and abetted WCM777 because it assisted in wiring funds to HSBC Hong Kong for individuals *other than the named plaintiffs*, but who may be included in the class.  The transfer of the funds of other unnamed individuals substantially assisted WCM777 in perpetuating its scheme because it could not continue without continued infusion of capital.  Had HSBC USA not continued to transfer *other people's money*, the named plaintiffs never would have been sucked into the scheme.

2. While not the named plaintiffs here, there may be some individuals encompassed in the proposed class who wire transferred money through HSBC USA to WCM777's account in Hong Kong.

3. Finally, HSBC USA obstructed the investigation of the authorities when it improperly responded to the Department's subpoena stating that it did not have any documents related to accounts held by WCM777.  Had HSBC USA truthfully responded to the subpoena, the authorities could have shut down the scam sooner, and Plaintiffs would not have fallen victim to the scheme.

*i. Plaintiffs' First Theory of Aiding & Abetting Causation*

Plaintiffs premise HSBC USA's liability on the Ninth Circuit's holding in *In re First Alliance Mortgage Co.*, 471 F.3d 977, 986 (9th Cir. 2006). In *First Alliance*, the Ninth Circuit upheld a jury verdict finding that Lehman Brothers aided and abetted First Alliance in its mortgage origination fraud. *Id.* at 995. The court reviewed the district court's denial of judgment as a matter of law, and, under a deferential standard, analyzed whether there was sufficient evidence of Lehman's "actual knowledge" of the fraud. *Id.* at 994. The plaintiffs presented the jury with evidence that Lehman received detailed reports explaining First Alliance's fraudulent scheme. *Id.* The court held that, "[w]hile the evidence supporting Lehman's 'actual knowledge' [was] not overwhelming, deference must be accorded the jury's factual findings at this state of review." *Id.*

Next, the court evaluated whether the plaintiffs submitted evidence warranting the jury's finding that Lehman substantially assisted First Alliance's fraud. The court explained that "ordinary business transactions a bank performs for a customer can satisfy the substantial assistance element of an aiding and abetting claim if the bank actually knew those transactions were assisting the customer in committing a specific tort." *Id.* at 995 (quoting *Casey*, 127 Cal. App. 4th at 1145.)

The plaintiffs presented evidence to the jury that Lehman provided all of First Alliance's financing needs, and that other investment banks stopped doing business with First Alliance after learning of their fraudulent lending practices. *Id.* Lehman admitted to providing assistance to First Alliance's business, but not to the fraud. The court upheld the jury's finding on these facts and noted that, "[i]n a situation where a company's whole business is built like a house of cards on a fraudulent enterprise, this is a distinction without a difference." *Id.*

Here, Plaintiffs do not submit any evidence that HSBC USA was the only bank funding WCM777's fraudulent enterprise. In fact, it is the exact opposite. Every named plaintiff wired money to WCM777's account at HSBC Hong Kong through

their own separate bank accounts, not HSBC USA.  (Giron Decl. ¶ 5, ECF No. 143-29; Herrera Decl. ¶¶ 2, 5, 7, ECF No. 143-30; Orlando Decl. ¶ 2, ECF No. 143-31, UF 55.)  HSBC USA provides evidence that noneof the named plaintiffs wire transfers to WCM777's Hong Kong account went through HSBC USA.  (UF 64–66.)  Plaintiffs attempt to dispute HSBC USA's showing by citing to inadmissible evidence.[11]  (*See* Section II.D.)  Furthermore, Plaintiffs' own declarations state that they wired the money through their own bank accounts, which supports the facts they claim are in dispute.  (Giron Decl. ¶ 5, ECF No. 143-29; Herrera Decl. ¶¶ 2, 5, 7, ECF No. 143-30; Orlando Decl. ¶ 2, ECF No. 143-31, UF 55.)  Plaintiffs' attempt to create a triable issue on this point is not sufficient.  *See British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978) (holding that a plaintiff must point to specific evidence creating a triable issue of material fact).

Furthermore, in *First Alliance*, Lehman provided financing for the product First Alliance was selling—predatory loans.  Here, Plaintiffs' theory is that because HSBC USA wired *other people's money* to WCM777's accounts in Hong Kong the fraudulent enterprise was allowed to continue and eventually dupe Plaintiffs.  Plaintiffs do not have any claims remaining against HSBC Hong Kong—the entity with a direct relationship with WCM777.  Plaintiffs never connect HSBC USA's conduct with the harm allegedly suffered by Plaintiffs, which they must do to survive summary judgment.  *See Mosier v. Stonefield Josephson, Inc.*, 815 F.3d 1161, 1167–68 (9th Cir. 2016) (affirming summary judgment of claims against accountants for aiding and abetting Ponzi scheme); *see also El Camino Res. LTD v. Huntington Nat'l Bank*, 722 F. Supp. 2d 875, 914 (W.D. Mich. 2010) ("In the words of plaintiffs' counsel, the bank is liable if it helped to 'perpetuate the enterprise.' … One might as easily hold the grocer liable for aiding and abetting Al Capone, on a showing that the grocer

---

[11] Plaintiffs cite three documents that demonstrate HSBC USA was the "correspondent bank" for HSBC Hong Kong, and argue that this creates a dispute as to whether HSBC USA was complicit in WCM777's fraud.  Even if HSBC USA is the correspondent bank for HSBC Hong Kong, Plaintiffs fail to address the fact that they have no relationship whatsoever with HSBC USA.

suspected Capone was a hoodlum but sold him food anyway, allowing him to live another day to commit his crimes.").

Plaintiffs allege that HSBC USA was the only "correspondent" bank of HSBC Hong Kong in the United States, and cite a Patriot Act Certification that identifies HSBC USA as the correspondent bank for HSBC Hong Kong.[12] (PAMF 22.) The document defines a "correspondent account" as "any account to receive deposits from, make payments or other disbursements on behalf of a foreign bank, or handle other financial transactions related to the foreign bank." (PRJN Ex. 10, ECF No. 143-14.) Plaintiffs' attempt to analogize to *First Alliance* on the grounds that HSBC USA was fully supporting WCM777, like Lehman was for First Alliance, is unavailing because Plaintiffs themselves did not use HSBC USA as the "correspondent account" in transferring their funds to WCM777. (Giron Decl. ¶ 5, ECF No. 143-29; Herrera Decl. ¶¶ 2, 5, 7, ECF No. 143-30; Orlando Decl. ¶ 2, ECF No. 143-31, UF 55.) This completely erodes their theory because there were other banks, and investors in the Ponzi scheme, that equally contributed to funding WCM777.

Plaintiffs also rely on *In re Equity Funding Corporation of America Securities Litigation*, 416 F. Supp. 161 (C.D. Cal. 1976). (Opp'n 8.) At the pleading stage, the *Equity* court accepted plaintiffs' theory that inside traders could be liable to plaintiffs who purchased stock on the open market during the period of alleged fraud, under Section 10(b) and Rule 10b-5. *In re Equity Funding*, 416 F. Supp. 185–86. The court reasoned that the defendants "[could] also be liable for breach of the duty they owed to all persons who during the same period purchased [securities] on the open market without knowledge of the material information which was in the possession of defendants." *Id.* at 185 (quotations omitted).

---

[12] Plaintiffs request judicial notice of this document, which is inadmissible for the purpose they seek to use it, as discussed in Section II.D. In any event, it does not matter whether HSBC USA was a correspondent bank for HSBC Hong Kong because none of the Plaintiffs had an account with, or wired money from, HSBC USA. (UF 64–66.)

Here, Plaintiffs do not bring any claims pursuant to securities law. In *Equity*, the court relied, in part, on "the purpose of the federal securities laws." *Id.* The fraud on the market theory addressed in *Equity* is also not at issue here. Accordingly, the Court does not find *Equity* persuasive in light of the theory of liability and facts that Plaintiffs present.

At the hearing, Plaintiffs raised an additional case that was in Defendant's Motion for Summary Judgment as supporting their theory of liability. *Neilson*, 290 F. Supp. 2d at 1129. In *Neilson*, the plaintiffs brought a putative class action against several banks. *Id.* at 1110. The plaintiffs alleged generally that the banks "knew or should have known that [the fraudster] was operating a Ponzi scheme, and that, without the assistance provided by the Banks, [the fraudster's] Ponzi scheme could not have succeeded." *Id.* The banks moved to dismiss, claiming that the plaintiffs had not satisfactorily alleged claims for aiding and abetting the fraudster. *See id.* at 1110–11. In discussing the "substantial assistance" requirement, the court held that the plaintiffs had alleged sufficient facts to survive a motion to dismiss because "the Banks substantially assisted [the fraudster] by giving him access to large sums of money that kept his scheme afloat for a significant period of time." *Id.* at 1129. This case, however, is distinguishable.

First, the Court is presented with a motion for summary judgment, not a motion to dismiss, and thus must evaluate the evidence Plaintiffs present, not the allegations. Like in *Neilson*, the Court here allowed Plaintiffs' allegations to survive a motion to dismiss, but now their allegations must be supported by evidence—they are not. Plaintiffs allege that HSBC USA's funds assisted in keeping WCM777 afloat, but, as discussed above, provide no evidence that it was the sole bank acting as a conduit for funds from unsuspecting investors. Indeed, Plaintiffs all wired their money through three different banking institutions. Moreover, Plaintiffs do not submit evidence regarding how much money WCM777 needed to continue functioning vis a vis when HSBC USA provided money to the enterprise, or how the timing of that infusion of

capital would have affected Plaintiffs' decisions to invest in WCM777. Plaintiffs' reliance on *Neilson* does not assist in their efforts to avoid summary judgment.

*ii. Plaintiffs' Second Theory of Aiding & Abetting Causation*

Plaintiffs' second theory is not grounded in fact. Plaintiffs present no evidence that the named plaintiffs had an account with HSBC USA, nor that they wired their funds through HSBC USA. Plaintiffs also have not presented evidence that HSBC USA opened any accounts for WCM777. If there are other individuals who did wire transfer money through HSBC USA to WCM777's Hong Kong account, they may have stronger grounds for a claim. But, those are not the named plaintiffs in this lawsuit, and Plaintiffs may not proceed on a theory that is not supported by the facts in front of the Court.

*iii. Plaintiffs' Third Theory of Aiding & Abetting Causation*

Plaintiffs' final argument is that HSBC USA caused their harm by failing to accurately respond to the Department's subpoena. (Opp'n 9–10.) Plaintiffs claim that HSBC USA's response "clearly inhibited the authorities" from "preventing all banks from allowing wire transfers to WCM777's accounts in HSBC Hong Kong." (Opp'n 10.) This theory does not create a triable issue for at least two reasons.

First, Plaintiffs do not submit any evidence rebutting HSBC USA's showing that it did not have any accounts open in WCM777's name. (UF 67.) The subpoena specifically asked for "[a]ny and all bank records concerning WCM777 and World Capital Market Inc. *bank accounts* with [HSBC USA]…." (ECF No. 145-5 at 9 (emphasis added).) Because WCM777 did not have any bank accounts with HSBC USA, the bank's response indicating it did not have any responsive documents appears accurate, and Plaintiffs do not present any evidence otherwise. (ECF No. 145-5 at 11.) Accordingly, there are no triable issues of fact regarding whether HSBC USA was withholding information from the authorities such that it was impeding the investigation.

Second, Plaintiffs must submit evidence that creates more than speculation to create a triable issue. *British Airways Bd.*, 585 F.2d at 952 ("A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation."). The chain of causation Plaintiffs argue should create a triable issue is nothing more than speculation. Plaintiffs' argument goes something like this: had HSBC USA provided the information it had regarding WCM777's potentially fraudulent business, the Department would have been able to stop WCM777 before Plaintiffs wired their money through their own bank accounts. No reasonable jury would make this inferential leap based on the facts Plaintiffs present. Accordingly, the Court finds that there is no triable issue of fact as to this theory of causation.

**D.      Plaintiffs' Request to Conduct Additional Discovery**

Plaintiffs request that the Court provide them leave, pursuant to Federal Rule of Civil Procedure 56(d), to conduct additional discovery to oppose Defendant's Motion for Summary Judgment. (Opp'n 17.) Rule 56(d) allows courts to provide a party opposing a motion for summary judgment an opportunity to conduct additional discovery where the party makes a sufficient showing, via affidavit, of the facts it seeks to discover, and why those facts would preclude summary judgment. *See Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090, 1100–01 (9th Cir. 2006) (applying the standard under former Rule 56(f)). "In order to gain the benefit of Rule 56(d), the party opposing summary judgment must make a sufficient proffer: 'the proffer should be authoritative; it should be advanced in a timely manner; and it should explain why the party is unable currently to adduce the facts essential to opposing summary judgment.'" *In re PHC, Inc. S'holder Litig.*, 762 F.3d 138, 143 (1st Cir. 2014) (quoting *Resolution Trust Corp. v. N. Bridge Assocs., Inc.*, 22 F.3d 1198, 1203 (1st Cir. 1994)).

Here, Plaintiffs chose to oppose Defendant's Motion for Summary Judgment substantively, instead of immediately filing a Rule 56(d) declaration seeking

additional time to obtain the evidence they now claim was necessary to oppose the Motion. *See id.* at 144 (discussing the fact that promptly filing an affidavit after receiving motion for summary judgment satisfied timeliness requirement). Further, Plaintiffs filed this action in 2015, and have had the opportunity to conduct discovery for close to two years. In addition to discovery to oppose the summary judgment, Plaintiffs wish to substitute in new class representatives. Plaintiffs wish they had prosecuted this action differently. The Court finds that under these circumstances, Plaintiffs have not made a sufficient showing under Rule 56(d) to warrant deferral of the Court's ruling on Defendant's Motion for Summary Judgment.

Further, Plaintiffs' position with regard to their request for additional discovery indicates it is more of a last-ditch effort to stave off summary judgment, than a genuine and calculated request to obtain necessary evidence. On the one hand, Plaintiffs seek additional discovery to identify documents that would show that the named Plaintiffs' money went through HSBC USA, while, on the other, they "argue that the law allows for causation as to any victim who invested after September 30, 2013, *not just those whose money flowed through HSBC USA*." (Opp'n 16–17 (emphasis added).) With respect to their first assertion, Plaintiffs have had many opportunities to obtain the evidence they seek, but have not been able to connect the dots. On their second point, as explained above, the Court does not agree that the law allows for liability under Plaintiffs' proffered theory with the plaintiffs and evidence presented here. Accordingly, the Court **DENIES** Plaintiffs' request for leave to conduct additional discovery, and **GRANTS** Defendant's Motion for Summary Judgment.[13]

## IV.   PLAINTIFFS' MOTION TO CERTIFY CLASS

Plaintiffs seek to certify a class defined as:

> All individuals or entities who [sic] invested and lost money
> with any of the WCM777 entities by transferring or having

---

[13] HSBC USA also moves for summary judgment on several other grounds. Because the Court finds the issue of causation dispositive, the Court declines to address HSBC USA's other arguments.

their money transferred to one of the WCM777 accounts at HSBC Hong Kong. For purposes of this class definition, an individual or entity lost money only if the amount of money that the individual or entity received from WCM777, including any return on investment, commissions, fees or any other payments, was less than the amount of the individual's or entity's money invested with WCM777. Excluded from the Class are governmental entities, any judge, justice or judicial officer presiding over this matter and the members of his or her immediate family, the Defendants, along with their respective parents, subsidiaries and/or affiliates. Also excluded from this class are the legal representatives, heirs, successors and attorneys of any excluded person or entity, and any person acting on behalf of any excluded person or entity.

(TAC ¶ 80; Mot. 13, ECF No. 126.)

While there are multiple reasons for the Court to deny Plaintiffs' Motion to Certify Class, the Court finds the analysis of "typicality" and "adequacy" most problematic. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992) (holding that plaintiffs failed to satisfy typicality where focus of litigation will be on defenses unique to named plaintiffs).

**A.    Legal Standard on Motion to Certify Class Action**

Class certification is appropriate only if "each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)" are met. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Under Rule 23(a), the plaintiff must show that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These requirements are colloquially referred to as numerosity, commonality, typicality, and adequacy. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012).

Next, the proposed class must meet the requirements of at least one of the three types of class actions listed in Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). A class action may be maintained under Rule 23(b)(3) as long as (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Failure to prove any one of Rule 23's requirements destroys the alleged class action." *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 675 (S.D. Cal. 1999).

Plaintiffs must establish the Rule 23 requirements by a preponderance of the evidence. *Dugan v. Ashley Furniture Indus., Inc.*, No. SA CV 16-1125 PA (FFMx), 2016 WL 9173459, at \*2 (C.D. Cal. Nov. 29, 2016). "To obtain class certification, 'actual, not presumed, conformance with Rule 23(a) [is]…indispensable.'" *Id.* (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982)). A class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co.*, 457 U.S. at 161.

**B.   Typicality**

Rule 23(a) requires Plaintiffs to prove "typicality." *Id.* "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose." *Hannon*, 976 F.2d at 508 (quoting *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986)). A motion for class certification should not be granted where the named plaintiff will be preoccupied with a unique defense. *Id.* Here, Plaintiffs' class definition includes individuals who wire transferred their money through HSBC USA, and individuals, such as the named plaintiffs, who wire transferred money to WCM777 through their personal bank accounts. As discussed above, Plaintiffs have not submitted evidence of causation sufficient to generate a triable issue of material fact, and thus their claims are subject to a unique defense as compared to other putative class members, who may have transferred their money through HSBC USA, and, therefore, might be able to demonstrate causation. *See*

*Quezada v. Loan Ctr. of Cal., Inc.*, No. 08-177, 2009 WL 5113506, at *5 (E.D. Cal. Dec. 18, 2009) ("Plaintiff's fraud claim is therefore subject to a unique defense of non-reliance that defeats her showing of typicality."); *Jordan v. Paul Fin., LLC*, No. 07-4496, 2009 WL 192888, at *5 (N.D. Cal. Jan. 27, 2009) (holding typicality not met where named plaintiff was subject to unique defense).

Plaintiffs do not address typicality in their Reply, despite HSBC USA's arguments in opposition. (*See generally* Reply, ECF No. 138.) Plaintiffs have not satisfactorily demonstrated typicality, and the Motion to Certify Class should be denied on that ground alone.

## C.   Adequacy

That the named plaintiffs here may be willing to pursue a theory that is not legally tenable to the detriment of the remaining class members also sheds light on their adequacy as class representatives. *See, e.g.*, *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985) (noting that typicality largely overlaps with the adequacy requirement). There are also several issues with the named plaintiffs' knowledge of the case, and motives for representing the class, which further erode their adequacy as representatives of the class.

"[A] party who is not familiar with the basic elements of its claim is not considered to be an adequate representative for the class." *Burkhalter Travel Agency v. Macfarms Int'l, Inc.*, 141 F.R.D. 144, 153 (N.D. Cal. 1991); *see also Bodner v. Oreck Direct, LLC*, No. C 06-4756 MHP, 2007 WL 1223777, at *2 (N.D. Cal. Apr. 25, 2007) ("In light of plaintiff's undeniable and overwhelming ignorance regarding the nature of this action…the court cannot conclude that he has met the…adequacy requirements of Rule 23(a)."). Plaintiffs argue in Reply that HSBC USA attacks the financial sophistication of the named plaintiffs. (Reply 8–9.) However, Plaintiffs ignore the inherent conflict of interest between the named class representatives, who did not wire money through HSBC USA, and the remaining putative class members

who may have.  Furthermore, HSBC USA submits evidence that rebuts Plaintiffs' bald assertion that the named plaintiffs are adequate:

- **Orlando's** father told him to participate in this lawsuit and Orlando didn't ask any questions.  (Korman Decl. ¶ 3, Ex. B, ECF No. 134-1, Orlando Dep. 13:4-13, ECF No. 134-2 ("I don't know why.  I never asked him.  He's like just 'Do It.' I was 'All right.'")  Orlando's knowledge of WCM777's scheme also comes from his father.  (*Id.* 11:13-12:25.)
- **Giron** thinks he sued the fraudster, never saw the complaints filed, does not know the difference between HSBC USA and HSBC Hong Kong, and believes that HSBC Hong Kong is the defendant.  (Korman Decl. ¶ 2, Ex. A, Giron Dep. 10:5-9; 15:4-8; 16:14-23; 31:13-32:8; 33:10-13; 42:17-22, ECF No. 134-2.)
- **Herrera** could not remember whether his lawyer provided anything more than the signature page to his English-language declaration, despite only reading Spanish.  (Korman Decl. ¶ 4, Ex. C, Herrera Dep. 84:11-88:25; 90:4-91:21.)

Plaintiffs do not rebut these facts, and do not meet their burden under the Court's rigorous analysis at this stage.  Accordingly, the Court **DENIES** Plaintiffs' Motion to Certify Class.  (ECF No. 126.)

**D.    Plaintiffs' Request to Substitute with New Class Representatives**

At the hearing on Plaintiffs' Motion to Certify Class, counsel indicated that he could identify different potential class representatives who might be better suited to represent the interests of the class, given the Court's concerns.  However, courts are generally reluctant to provide plaintiffs with multiple opportunities to move for class certification, absent some compelling change in circumstance.  *See, e.g.*, *David v. Bankers Life & Cas. Co.*, No. C14-744RSL, 2016 WL 2610246, at *3 (W.D. Wash. May 6, 2016) (refusing to grant motion to reconsider first order denying class certification); *c.f. English v. Apple Inc.*, No. 14-cv-01619-WHO, 2016 WL 1108929, at *3 (N.D. Cal. Mar. 22, 2016) (denying motion for reconsideration where the party could not demonstrate the evidence "was not reasonably available at the time of the original class certification decision, or that [the evidence] could not have been obtained earlier in the exercise of reasonable diligence").

Here, the Court has provided Plaintiffs several extensions to the Central District's Local Rule 23-3, which requires a party to seek class certification "[w]ithin 90 days after service of a pleading purporting to commence a class action…." C.D. L.R. 23-3; (ECF Nos. 45, 81, 94) (granting extensions of time to file motion for class certification)). Plaintiffs have had significant time to conduct discovery, and to identify plaintiffs that they thought would be typical of, and adequately represent, the class. However, despite adequate opportunity to identify and propose different class representatives, they chose to file their Motion to Certify Class, and only raised the possibility of different class representatives when substantively challenged regarding their typicality and adequacy. Furthermore, at the hearing, Plaintiffs' counsel admitted that Defendant raised the issue of typicality early in the case. Yet, the Court is still left performing its rigorous analysis of Plaintiffs' Motion to Certify Class with three plaintiffs who admittedly did not wire any money through HSBC USA. To the extent the Court were to grant Plaintiffs additional time to locate and substitute new class representatives, the parties would then need to conduct discovery regarding the new class representatives, which is unacceptable given the Court's prior extensions allowing Plaintiffs to obtain the evidence they deemed necessary prior to moving for class certification. Accordingly, the Court **DENIES** Plaintiffs' request for leave to substitute different, more adequate class representatives.

## V.    THE PARTIES' MOTIONS TO STRIKE & EXCLUDE

HSBC USA seeks to exclude the declaration of third-party witness, Basilia Ayala, and exhibits thereto (ECF No. 126-7), (ii) the Massachusetts Securities Division documents (ECF No. 126-4, Ex. B), and (iii) the California Department of Business Oversight documents (ECF No. 126-4, Ex. C) (collectively, the "Undisclosed Evidence"), in support of Plaintiffs' Motion for Class Certification (ECF No. 126).

Similarly, Plaintiffs seek to strike and exclude: 1) the Declaration of Steven Mulligan (ECF No. 136); 2) the Declaration of Paul M. Khareyn (*Id.*); and 3) "any previously undisclosed transaction reports relied upon by Mr. Mulligan and Mr.

Khareyn in making their declarations, all offered in support of Defendant's Motion for Summary Judgment."  (Not. of Mot. 2, ECF No. 142.)  Plaintiffs claim HSBC USA failed to timely disclose this evidence, and that the Court should exclude it pursuant to Federal Rule of Civil Procedure 37(c).  (Mot. 4, ECF No. 142.)

The Court reviewed the parties' motions, and confirmed at the hearing that none of the evidence that is the subject of either party's motion addresses the issue of causation as it pertains to the named plaintiffs.  Accordingly, the Court declines to rule on these motions because they do not have an effect on the primary issue here, which is whether Plaintiffs submitted any evidence establishing a causal connection between HSBC USA and the named plaintiffs.  Thus, the Court **DENIES, AS MOOT**, Plaintiffs' Motion to Strike and Exclude (ECF No. 142), and Defendant's Motion to Strike and Exclude.  (ECF No. 135.)

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## VI.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's Motion for Summary Judgment.   (ECF No. 137.)   The Court **DENIES** Plaintiffs' Motion to Certify Class.   (ECF No. 126.)   And, in light of the discussion above, the Court **DENIES, AS MOOT**, Defendant's Motion for Sanctions (ECF No. 135), and Plaintiffs' Motion to Strike and Exclude (ECF No. 142.)

**IT IS SO ORDERED.**

November 15, 2017

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**